UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| EVAN LAMB, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-170 |
| | ) | (PHILLIPS /SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment [Doc. 12] and Defendant's Motion for Summary Judgment [Doc. 16]. Plaintiff Evan Lamb, Jr. ("Plaintiff"), seeks judicial review of the decision of Administrative Law Judge ("ALJ") John L. McFadyen denying him benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On December 5, 2006, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). [Tr. 14]. On both applications, Plaintiff alleged a period of disability which began on June 1, 2006. [Tr. 14]. After his application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On April 8, 2008, a hearing was held before ALJ John L. McFadyen to review the determination of Plaintiff's claim. [Tr. 504-20]. On

August 25, 2008, the ALJ found that Plaintiff was not under a disability from June 1, 2006, through the date of the decision. [Tr. 14-19]. On February 20, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 6-8]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**I.     ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 1, 2010.

2. The claimant has not engaged in substantial gainful activity since June 1, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: chronic back due to lumbar spondylosis; GERD/peptic ulcer disease; and depression/bi-polar disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the RFC to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant must have ready access to bathroom facilities and the work must not be skilled. The undersigned further notes that the claimant can understand and remember simple and detailed, non-complex tasks; can sustain concentration and persistence; can adapt to infrequent change; and would not experience any substantial difficulty interacting with the public, supervisors, and co-workers.

6. The claimant is capable of performing his past relevant work as a cushion stuffer. This work does not require the performance of work-related activities precluded by

the claimant's RFC (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2006 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 14-19].

## II. DISABILITY ELIGIBILITY

An individual is eligible for DIB payments if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI payments if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

3

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.

4

Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff].");

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

5

id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. § 706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," and the Court therefore "cannot excuse the denial of a mandatory procedural protection . . . simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination. Wilson, 378 F.3d at 545-46. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a

harmless *de minimis* procedural violation").

On review, Plaintiff bears the burden of proving his entitlement to benefits. <u>Boyes v. Sec'y. of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)).

**IV. ANALYSIS**

Plaintiff contends that the ALJ's determination of both his physical and mental residual functional capacity ("RFC") was not supported by substantial evidence. [Doc. 13 at 5]. Plaintiff argues that the ALJ made the following errors when determining his RFC:

> (A) failing to accord proper weight to the opinion [Tr. 428-29] of Plaintiff's treating physician, Dr. Michael Chavin, M.D.;
>
> (B) relying upon Plaintiff's one-time Global Assessment of Functioning ("GAF") score of 60; and
>
> (C) failing to consider "the medical records that indicate that [Plaintiff] does have a history of audio hallucination, suicidal and homicidal thoughts, and other various mental problems."

[Doc. 13 at 6].

Plaintiff argues that the three errors listed above caused the ALJ to make an overall RFC determination that was incorrect and unsupported by the record. Plaintiff also argues generally that the ALJ's decision "was based upon selectively chosen sections of the record, rather than the entirety of the medical evidence from [Plaintiff]'s treating and examining physicians." [Doc. 13 at 7]. Plaintiff concludes that the ALJ's finding that he has the RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that [he] must have ready access to bathroom facilities and the work must not be skilled," [Tr. 17], was not supported by substantial evidence.

In response, the Commissioner contends that the ALJ considered the entire record, and that substantial evidence supported his determination of Plaintiff's RFC. [Doc. 17 at 11-17]. The Commissioner argues that the ALJ properly considered and weighed all of the opinion evidence in the record, including the opinion of Dr. Chavin, when determining Plaintiff's RFC. [Doc. 17 at 11-14]. The Commissioner specifically argues that "[b]ecause Dr. Chavin's opinion lacked medical support and was inconsistent with substantial evidence in the record, the ALJ had a reasonable basis for not crediting it." [Doc. 17 at 14]. The Commissioner concludes that substantial evidence supported the ALJ's ultimate decision that Plaintiff was able to perform his past relevant work as a cushion stuffer, and therefore was not under a disability and not entitled to DIB and SSI payments.

The Court addresses Plaintiff's three allegations of error in turn.

### A. The ALJ's consideration of Dr. Chavin's opinion

When determining a claimant's RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). A medical source is considered a *treating* medical source if he has provided medical treatment or evaluation, and he has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." Blakley, 581 F.3d at 407 (quoting 20 C.F.R. § 404.1502).

An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if

it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; see 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions). The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to a treating source's non-controlling opinion when reaching his decision. 20 C.F.R. § 404.1527(d)(2); Blakley, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians"). In order to determine the proper weight to give to a treating source's non-controlling opinion, the ALJ must conduct a six-factor analysis. See 20 C.F.R. § 404.1527(d)(2). The ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, Plaintiff argues that the ALJ failed to accord proper weight to the opinion of Dr. Michael Chavin, M.D., that was provided on April 7, 2008, in a "Medical Opinion Form Re: Ability to Do Work Related Activities (Physical)" [Tr. 428-29]. On the opinion form, Dr. Chavin stated that Plaintiff had the ability to lift and carry a maximum of five pounds. [Tr. 428]. Dr. Chavin also stated that during an 8-hour day Plaintiff could stand and walk for only 30 minutes, and could only

sit for a period of time less than two hours. [Tr. 428].

The ALJ considered Dr. Chavin's opinion form and discussed it in his narrative decision as follows:

> "Little weight is given to Dr. Chavin's Medical Opinion Regarding the Claimant's Ability to do Work-Related Activities which finds the claimant capable of lifting only less than 10 pounds; sitting, standing, and/or walking for less than 2 hours in an eight-hour workday; and no ability to twist or stoop. The undersigned notes that such extreme physical limitations are *inconsistent with Dr. Chavin's treatment notes* discussed above which describe the claimant as 40% more active, obtaining 50% pain relief, and report his main problems being ulcer disease and anxiety. Furthermore, Dr. Chavin's *treatment notes never discuss any physical limitation* or describe the claimant as disabled or unable to work. Finally, objective testing (including MRIs) does not reveal severe/progressive spinal disease."

[Tr. 18] (emphasis added).

As an initial matter, it is clear from his references to Dr. Chavin's "treatment notes" that the ALJ considered Dr. Chavin to be a treating source. Because Dr. Chavin was a treating source, his opinion was entitled to receive controlling weight in the ALJ's RFC determination process if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544. The ALJ chose not give Dr. Chavin's opinion controlling weight, and he justified this choice by providing two reasons, italicized in the above quotation, for why Dr. Chavin's opinion deserved "little weight." The Court finds that the ALJ's reasons for discounting Dr. Chavin's opinion were reasonable and supported by substantial evidence.

The ALJ justified his rejection of Dr. Chavin's opinion by explaining that the opinion was inconsistent with Plaintiff's treatment history. See 20 C.F.R. § 404.1527(d)(2) and -(4). The Court finds that there is substantial evidence in the record to support this explanation. Dr. Chavin treated

Plaintiff for facet joint pain, sacroiliac joint pain, and pain caused by lumbar spondylosis during the period from August 15, 2007, to September 5, 2007. [Tr. 339, 341, 343, 428]. The documentation of Dr. Chavin's treatment of Plaintiff that is available in the record, [Tr. 313-64], reveals that Plaintiff first consulted Dr. Chavin on August 15, 2007, after being referred by another health care provider. Dr. Chavin performed the same procedure–described as a "facet joint block at L3-L4, L4-L5, and L5-S1" and a "left sacroiliac joint injection" all "under fluoroscopic guidance"–on Plaintiff on August 22, 2007, August 29, 2007, and September 5, 2007. [Tr. 314, 321, 339]. The record does not contain any documentation of follow-up consultations. Thus, the record indicates that Dr. Chavin saw Plaintiff on only four occasions and performed only one type of pain management procedure. The Court finds that it was reasonable for the ALJ to determine that the length of the treatment relationship and the infrequency of substantive examination and analysis were factors that favored reducing the weight given to Dr. Chavin's opinion [Tr. 428-29]. See 20 C.F.R. § 404.1527(d)(2)(i).

Further, Dr. Chavin's treatment notes do not indicate that Plaintiff had severe physical limitations. A few examples of Dr. Chavin's notes are sufficient to illustrate this point. On September 5, 2007, Dr. Chavin noted that Plaintiff "could walk unassisted," and had a "pain level [of] about 6/10 on the visual analog scale." [Tr. 316]. On August 15, 2007, Dr. Chavin noted that Plaintiff had "5/5 muscle strength in both lower extremities." [Tr. 354]. On the same date, Dr. Chavin also stated his opinion that Plaintiff "is not disabled." [Tr. 360].

The ALJ also provided a second justification for discounting Dr. Chavin's opinion. The ALJ found that Dr. Chavin inadequately explained how his opinion was supported by medical signs and laboratory findings. See 20 C.F.R. § 404.1527(d)(3). The ALJ stated that "Dr. Chavin's treatment

11

notes never discuss any physical limitation." [Tr. 18]. In other words, Dr. Chavin did not support his opinion about Plaintiff's specific physical limitations with any references to clinical findings or observations made during his four appointments with Plaintiff. The opinion form completed by Dr. Chavin prominently states that "it is important that you relate particular medical findings to any reduction in capacity; the usefulness of your opinion depends on the extent to which you do this." [Tr. 428]. The ALJ found that Dr. Chavin failed to follow this instruction. On the form itself, Dr. Chavin provided no explanation of how Plaintiff's medical condition or pain caused physical limitations. And nothing in the documents related to Dr. Chavin's treatment of Plaintiff, [Tr. 313-64], ever connects Plaintiff's medical condition or his pain to a reduction in Plaintiff's physical capacity. Accordingly, the ALJ's finding that Dr. Chavin's opinion was not supported by any medical signs and laboratory findings contained in the documentation of Plaintiff's treatment [Tr. 313-64] was supported by substantial evidence.

The Court concludes that the ALJ provided valid reasons that were supported by substantial evidence for giving Dr. Chavin's opinion "little weight." Though the ALJ did not specifically lay out the 20 C.F.R. § 404.1527 six factor analysis in his decision, he did explain that (1) Dr. Chavin's opinion was inconsistent with Plaintiff's treatment history, see 20 C.F.R. § 404.1527(d)(2), and (2) Dr. Chavin did not provide an adequate evidentiary basis to support his opinion, see 20 C.F.R. § 404.1527(d)(3). The ALJ focused on these two factors to appropriately decide that Dr. Chavin's opinion was entitled to little weight. The Court finds that even if the ALJ erred by failing to expressly consider the other factors, the error was harmless and does not warrant remand. The two reasons provided by the ALJ are sufficient to support a determination that Dr. Chavin's opinion was entitled to little weight. See Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has

12

consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."). Accordingly, the Court finds that the ALJ's decision to give Dr. Chavin's opinion "little weight" in the RFC determination process was supported by substantial evidence.

### B. The ALJ's alleged reliance on a one-time GAF score

Plaintiff contends that the ALJ "erroneously relied upon a one time GAF score of 60" when determining his mental RFC. [Doc. 13 at 6]. Plaintiff argues that the ALJ "failed to consider that records show [that his] GAF varied substantially." [Doc. 13 at 6]. In response, the Commissioner acknowledges that Plaintiff's GAF scores were variable, but points out that Plaintiff's score indicated "serious symptoms" on only two occasions. [Doc. 17 at 16]. The Commissioner states that "Plaintiff's GAF scores otherwise ranged from 58 to 65, indicating symptoms or functional limitations in the mild range or the very high end of the moderate range." [Doc. 17 at 16]. The Commissioner argues that when considered together, Plaintiff's GAF scores do not constitute evidence that should have necessitated the inclusion of greater mental restrictions in the ALJ's RFC finding. [Doc. 16 at 17].

The ALJ expressly mentioned one of Plaintiff's GAF scores in his narrative decision as support for his conclusion that Plaintiff has the mental RFC to "understand and remember simple and detailed, non-complex tasks," "sustain concentration and persistence," "adapt to infrequent change," and interact with the public, supervisors, and co-workers without substantial difficulty. [Tr. 17]. The ALJ stated as follows: "Exams also reveal a stable mood. A psychological evaluation rates

the claimant's GAF at 60 with adequate social skills; good concentration; non-psychotic thought content; logical and concrete thought processes; no suicidal or homicidal ideations; and no delusions or hallucinations." [Tr. 18]. Plaintiff appears to argue that because the ALJ expressly mentioned one GAF score, but failed to mention others, he committed a procedural error that warrants remand. The Court disagrees.

Plaintiff is correct that highlighting only one of the many GAF scores in the record without explaining why was inappropriate. However, the Court finds that the ALJ's improper inclusion of just one GAF score in his narrative decision was a harmless error that does not warrant remand. Plaintiff has not explained his argument that the ALJ's mental RFC finding was not supported by substantial evidence. Plaintiff also has not shown why the ALJ's mental RFC finding would have changed if the ALJ had either included discussion of all of Plaintiff's GAF scores, or excluded any discussion of GAF scores whatsoever

The Social Security Administration has not promulgated regulations requiring a certain procedure for considering GAF scores. These scores "are not raw medical data," and they merely represent "a clinician's *subjective rating*, on a scale of zero to 100, of an individual's overall psychological functioning." Kornecky v. Comm'r of Soc. Sec., 167 Fed. App'x 496, 503 n.7 (6th Cir. 2006). GAF scores are not entitled to any particular deference, and an ALJ should evaluate them as he would any other piece of opinion evidence. See Davis v. Chater, 104 F.3d 361, 1996 WL 732298 at *2 (6th Cir. 1996) (stating that it is well within an ALJ's discretion to disregard a GAF score based upon credibility determinations and a weighing of the evidence). Because there are not specific procedural regulations governing the consideration of GAF scores, an error committed by an ALJ when considering such scores does not deprive a claimant of an important procedural benefit

14

or safeguard. See Wilson, 378 F.3d at 546-47. Accordingly, an ALJ's procedural error when discussing–or failing to discuss–GAF scores is harmless as long as the ALJ's ultimate disability determination decision was supported by substantial evidence. See id. at 547.

The Court finds that substantial evidence, particularly the Mental RFC Assessment [Tr. 379-81] completed by Dr. Jeffrey Wright, Ph.D., and the mental examination report [Tr. 300-04] provided by Dr. Robert Spangler, Ed.D., supported the ALJ's findings regarding Plaintiff's mental RFC. Substantial evidence existed to support the ALJ's findings irrespective of whether Plaintiff's GAF scores were properly considered or not. Thus, any error committed by the ALJ when evaluating–or overlooking–those scores was a harmless error that does not warrant remand.

### C. The ALJ's alleged failure to consider some medical records

Plaintiff contends that "the ALJ failed to consider the medical records that indicate [that Plaintiff] does have a history of audio hallucination, suicidal and homicidal thoughts, and other various mental problems" when determining Plaintiff's mental RFC. [Doc. 13 at 6]. Specifically, Plaintiff argues that the ALJ failed to consider a "Behavioral Health Intake" form [Tr. 272-78] completed by a clinician at Cherokee Health Systems that indicates that Plaintiff reported both suicidal and homicidal thoughts. [Doc. 13 at 3]. Plaintiff also argues that the ALJ failed to consider a "Psychiatric History and Assessment Thirty Day Update" [Tr. 482-86] completed by doctors at Peninsula Hospital that indicates that Plaintiff complained of "auditory hallucinations telling him to kill [him]self." [Doc. 13 at 5].

In response, the Commissioner argues that the ALJ considered all of Plaintiff's medical records that were "actually presented to him" when determining Plaintiff's mental RFC. [Doc. 17

at 16]. The Commissioner argues that the ALJ "provided a comprehensive discussion of Plaintiff's mental health history in his decision," and "included a number of mental limitations in his RFC [finding] which amply accounted for Plaintiff's mental impairments." [Doc. 17 at 16]. With regard to the "Psychiatric History and Assessment Thirty Day Update" form, the Commissioner points out that it is dated November 14, 2008, almost three months after the date of the ALJ's decision. [Doc. 17 at 15]. The Commissioner argues that because the form was not evidence before the ALJ, it cannot now be considered as part of the record for purposes of substantial evidence review of the ALJ's decision.

The Court finds that the ALJ properly considered Plaintiff's medical records. The ALJ provided an adequate and fair summary of Plaintiff's mental health issues and mental health treatment record. An ALJ is not required to include a summary of every document pertaining to a claimant's mental health in the portion of his narrative decision where he explains his conclusions about the claimant's mental RFC. The ALJ is required to consider all of the evidence in the record, but decisions about which evidence merits discussion in the narrative decision are well within the ALJ's "zone of choice" where he can act without the fear of court interference. See Buxton, 246 F.3d at 773. In this case, the ALJ's choice not to include an express reference to Plaintiff's report to Cherokee Health Systems that he had experienced suicidal and homicidal thoughts was reasonable. The ALJ expressly discussed other, more probative evidence of Plaintiff's mental health.

With regard to the "Psychiatric History and Assessment Thirty Day Update" form, the Court finds that the Commissioner properly stated the law in his memorandum. See [Doc. 17 at 15-16]. An ALJ cannot be faulted for having failed to weigh evidence never presented to him. "Evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record

for purposes of substantial evidence review." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). Because the "Psychiatric History and Assessment Thirty Day Update" form was not evidence before the ALJ, the Court cannot consider it when reviewing the ALJ's decision.

The Court concludes that the ALJ's determination of Plaintiff's mental RFC was supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion For Summary Judgment **[Doc. 12]** be **DENIED**, and the Commissioner's Motion for Summary Judgment **[Doc. 16]** be **GRANTED**.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).